*The parties are directed to appear for a pre-motion conference on November 3, 2011 at 11:00 a.m.*

**SO ORDERED:**

*[signature]*
**WILLIAM H. PAULEY III U.S.D.J.**  10/12/11

**MAYER•BROWN**

Mayer Brown LLP
1675 Broadway
New York, New York 10019-5820

Main Tel +1 212 506 2500
Main Fax +1 212 262 1910
www.mayerbrown.com

September 28, 2011

**VIA HAND DELIVERY**

SEP 29 2011

Matthew D. Ingber
Direct Tel +1 212 506 2373
Direct Fax +1 212 849 5973
mingber@mayerbrown.com

Hon. William H. Pauley
United States District Court
 for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:   *Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago v. The Bank of New York Mellon* (11-cv-5459 (WHP))

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/12/11

Dear Judge Pauley:

We represent defendant The Bank of New York Mellon ("BNYM") in the above-captioned case. Pursuant to Your Honor's Individual Practice III.A., we submit this pre-motion letter relating to our anticipated motion to dismiss the Verified Class Action and Derivative Complaint (the "Complaint") dated August 31, 2011.

The plaintiffs misunderstand the role of a trustee in a mortgage-securitization trust. They assert duties that do not exist, ascribe to the Trustee obligations that the governing contracts assign to other parties, and assume that obligations were triggered based on an alleged Event of Default that cannot—as a matter of straight contract interpretation—have occurred.

But the central, overarching problem with the Complaint is the lack of standing and federal jurisdiction. The plaintiffs allege that they hold securities from only 24 of the 534 Covered Trusts. Accordingly, they lack standing to sue on the remaining trusts. *See In re Bank of Am. Secs., Derivative & ERISA Litig.*, No. 09 MD 2058(PKC), 2011 WL 3211472, at *13 (S.D.N.Y. July 29, 2011) ("the plaintiffs do not have standing to bring claims on behalf of purchasers or sellers of securities that the plaintiffs did not themselves purchase or sell").

In particular, the plaintiffs allege holdings in only one of the Delaware statutory trusts, which are the only trusts that issued debt and could be subject to the Trust Indenture Act. *See* 15 U.S.C. § 77ddd(a)(1). The others, all New York common-law trusts, issued equity, and are not subject to the TIA. *See* PSA, Preliminary Statement & § 10.12(a). Therefore, at most, the court has federal question jurisdiction over a single claim relating to a single trust.[2]

---

[2]   The other alleged jurisdictional basis is diversity under 28 U.S.C. § 1332(d) (CAFA). CAFA does not create jurisdiction because the case falls within the "securities exception" in Section 1332(d)(9)(C).

Mayer Brown LLP operates in combination with our associated English limited liability partnership
and Hong Kong partnership (and its associated entities in Asia) and is associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Hon. William H. Pauley
September 28, 2011
Page 2

Even if the plaintiffs somehow had standing to represent holders of certificates or notes in other trusts, there still would be no supplemental jurisdiction over the state-law claims because there is no "common nucleus of operative fact" (see *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006)) either (a) between the claims as to the Delaware and New York trusts, or even (b) between the TIA claim and the state-law claims, as to each Delaware trust. Each trust has its own contracts, loans and mortgage files, and Trustee certifications, and the TIA and state-law claims raise different factual and legal issues. At the very least, the state-law claims would "substantially predominate[]" over the federal claims, making it appropriate to decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(2).

In addition to those issues, each of the six claims should be dismissed as a matter of law. The first is for breach of the Trust Indenture Act ("TIA"). That claim applies only to a few trusts and alleges specific duties that, as described below, do not exist.[3]

The second cause of action is for a wide variety of alleged breaches of the PSAs. Some involve duties—such as the duty to provide mortgage files—that the PSAs impose, if at all, only on other parties. Others misconstrue the PSAs. The certifications, for example, do not require that the Trustee "acknowledg[e] that it had received and reviewed the loan files for each of the mortgage loans." Cmplt. ¶ 39(1). Rather, the Trustee certifies only which documents it has received and which it has not received. Yet other allegations rest on duties that are expressly carved out from the PSAs. *See* PSA § 2.02 ("Trustee shall be under no duty or obligation to" review mortgage documents to "determine that the same are . . . enforceable"); § 8.01 (before default, Trustee "shall undertake to perform such duties and only such duties as are specifically set forth in this Agreement"); § 8.01(i) ("unless an Event of Default known to the trustee shall have occurred and be continuing, the duties and obligations of the Trustee shall be determined solely by the express provisions of this Agreement, the Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this agreement, [and] no implied covenants or obligations shall be read into this Agreement against the Trustee").

The third cause of action is for breach of the covenant of good faith and fair dealing. This claim asserts a general duty "to protect the Certificate holders' interests." Cmplt. ¶ 104. This claim is defective for several reasons. First, it depends on the allegation that the Trustee failed to take action in response to alleged breaches by Countrywide. The Trustee did not fail to act—it entered into a settlement that requires, among other things, the payment of $8.5 billion and industry-leading improvements to Countrywide's mortgage servicing process.[4]

---

[3] Further, the one Delaware trust in which plaintiffs held securities (CWHEQ Inc. 2006-D) is covered by a financial insurance policy. Therefore, it appears unlikely that the plaintiffs can allege any damages with respect to that trust.

[4] The Court may take judicial notice of the proceeding, in which the plaintiffs here have intervened, seeking approval of that settlement. *See Troni v. Holzer*, No. 09 Civ. 10239(WHP), 2010 WL 3154852, at *1 n.1 (S.D.N.Y. July 29, 2010) ("Judicial notice may encompass the status of other lawsuits, including in other courts, and the substance of papers filed in those actions.").

Hon. William H. Pauley
September 28, 2011
Page 3

      Second, the implied covenant does not impose a fiduciary-like duty to proactively defend the interests of the other parties. *See Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 408 (2d Cir. 2006). This is not to say that the Trustee should not act in the interests of Certificateholders when it does act, but the Trustee is not required to act with respect to a particular matter unless it has a specific duty to do so. And in any event, the implied covenant of good faith and fair dealing does not create any such duty at all. Third, the covenant "cannot be used to add a new term to a contract, especially to a commercial contract between two sophisticated commercial parties represented by counsel." *D&L Holdings, LLC v. RCG Goldman Co., LLC*, 287 A.D.2d 65, 73 (N.Y. App. Div. 2001). The contracts here do not require the Trustee to enforce breaches of the PSAs, they set forth the Trustee's exclusive duties with respect to mortgage files, and they negate any obligation to initiate litigation against Countrywide except under circumstances that are not alleged here.

      The fourth cause of action is for negligent omission. This claim rests on implied duties to investigate and disclose defects that are negated by the PSAs. *See* PSA § 8.01(i).

      The fifth cause of action is for negligence in the Trustee's performance under the PSAs. The duty to perform ministerial duties with due care, however, does not expand the Trustee's duties beyond those stated in the contract. *Cf. Beck v. Mfrs. Hanover Trust Co.*, 218 A.D.2d 1, 13 (N.Y. App. Div. 1995) ("The trustee must in the postdefault context act prudently, but only in the exercise of those rights and powers granted in the indenture."). Thus, where the PSAs set forth in detail the Trustee's duties with respect to receiving and maintaining mortgage files, the Trustee's failure to act in a manner not contemplated by the PSAs is not negligence.

      The sixth and final cause of action is for breach of fiduciary duty. As the Complaint concedes, there is no such duty before an Event of Default. PSA § 8.01. The Complaint alleges that an Event of Default has occurred because the Master Servicer has breached its obligations under the PSAs, and BNYM had notice of those failures based on "foreclosure actions brought on its own behalf" and through "widespread news coverage of foreclosure fraud." Cmplt. ¶ 98. Based on the plain language of the contracts, that is incorrect: most of the alleged breaches do not even relate to duties that the PSAs impose on the Master Servicer, and the complaint does not allege that the Master Servicer received written notice of default, both of which are prerequisites to default. In addition, media coverage and inferences drawn from foreclosure cases are not the kind of "written notice" to a Responsible Officer of the Trustee that the PSAs require.

      We look forward to discussing these matters with the Court at its convenience.

      Respectfully submitted,

      */s/ Matthew D. Ingber/cjh*
      Matthew D. Ingber

cc:    Beth Kaswan, Esq. (by email)