UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
                                :
RETIREMENT BOARD OF THE         :    11 Civ. 5459 (WHP)
POLICEMEN'S ANNUITY AND         :
BENEFIT FUND OF THE CITY        :    MEMORANDUM & ORDER
OF CHICAGO, et al.,             :
                                :
                Plaintiffs,     :
                                :
        -against-               :
                                :
THE BANK OF NEW YORK MELLON,    :
                                :
                Defendant.      :
-------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/14/13

WILLIAM H. PAULEY III, District Judge:

The Bank of New York Mellon ("BNYM") moves for reconsideration of this Court's Memorandum & Order dated April 3, 2012 (the "April 3 Order") granting BNYM's motion to dismiss the complaint in part and denying it in part. In the alternative, BNYM moves to certify the April 3 Order for interlocutory appeal. For the following reasons, BNYM's motion for reconsideration is denied, but this Court certifies the April 3 Order for interlocutory appeal.

BACKGROUND

I.    Factual Background

The April 3 Order sets forth the allegations underlying this action. See Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon, ---F. Supp. 2d----, 2012 WL 1108533, at *1-*2 (S.D.N.Y. 2012). To summarize, Plaintiffs own mortgage-backed securities for which BNYM serves as trustee. They allege that BNYM violated the Trust Indenture Act of 1939, 15 U.S.C. § 77aaa, et seq. (the "TIA") and breached its contractual and fiduciary duties.

More specifically, Plaintiffs hold securities issued by twenty-five New York trusts and one Delaware trust. (Class Action and Derivative Complaint, dated Aug. 31, 2011 ("Compl.") Ex. B.) BNYM is trustee for the New York trusts and Countrywide (now Bank of America) is the "master servicer." (Compl. ¶¶ 1, 15, 96 n. 2.) The terms of the New York trusts as well as the rights, duties, and obligations of the trustee and the master servicer are set forth in Pooling and Servicing Agreements ("PSAs"). (Compl. ¶ 2; Compl. Ex. C: Pooling and Servicing Agreement dated Sept. 1, 2006.) The PSAs also govern the trustee's distribution of money to certificateholders. (Compl.¶¶ 1, 2.) The Delaware trust operates similarly, with a few key differences. The Delaware trust issued notes, subject to an indenture, for which BNYM serves as indenture trustee. (Declaration of Matthew D. Ingber, dated Dec. 16, 2011 ("Ingber Decl.") Ex A: Indenture, dated Mar. 30, 2006 § 3.04, Annex 1 (Glossary).) Concurrently, the Delaware trust entered into a Sale and Servicing Agreement ("SSA") with Countrywide (now Bank of America) governing the sale of the underlying mortgage loans and the master servicer's responsibilities. (Ingber Decl. Ex. B: Sale and Servicing Agreement, dated Mar. 30, 2006.)

II.     Procedural Background

On its motion to dismiss, BNYM conceded that the mortgage-backed notes issued by the Delaware trust are debt securities to which the TIA applies. BNYM contended, however, that the certificates issued by the twenty-five New York trusts are equity securities exempt from the TIA under section 304(a)(1). BNYM relied heavily on several treatises to support its position. BNYM also argued that the structure of the New York certificates closely resembles equity. BNYM did not invoke any TIA exemption other than section 304(a)(1). Specifically, BNYM did not contend that the New York certificates were exempt under section 304(a)(2) as

"certificates of interest or participation in two or more securities having substantially different rights and privileges[.]" 15 U.S.C. § 77ddd(a)(2).

In its reply brief in support of its motion to dismiss, BNYM mentioned in passing that the United States Securities and Exchange Commission (the "SEC") agreed that the New York certificates were TIA-exempt and cited informal guidance published on the SEC's website. BNYM failed to observe, however, that the SEC relied on section 304(a)(2) of the TIA, and not section 304(a)(1). Rather, BNYM simply pointed the Court to the SEC's website and argued that the SEC's guidance "merit[s] some deference." United States v. Mead Corp., 533 U.S. 218, 234 (2001).

After this Court issued the April 3 Order, BNYM moved for reconsideration and advanced several new theories. The Court also received several amicus curiae submissions supporting BNYM's motion for reconsideration. For the most part, these submissions raise policy-based objections to the April 3 Order and do not address in any detail the issues of statutory interpretation at the heart of this motion. And "this [C]ourt knows the difference between a friend of the court and a friend of one of the litigants." SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC, 407 F. Supp. 2d 587, 590 (S.D.N.Y. 2006) (Mukasey, J.). When amici that are "aligned with one who has interest in the outcome of a case" submit briefs "in direct response to an opinion of this [C]ourt that is adverse to that interest," their arguments "will have to stand or fall not on the purported authority of [their] source but solely on [their] own internal logic." SR Int'l, 407 F. Supp. 2d at 590. Further, "[e]verything [BNYM and its amici have] submitted on this motion should have been before the Court earlier, which is more than sufficient

reason to deny its motion as an unwarranted imposition on the Court and, indeed, its adversary." Bridgeman Art Library, Ltd. v. Corel Corp., 36 F. Supp. 2d 191, 192 (S.D.N.Y. 1999).

## DISCUSSION

I. Legal Standard

BNYM purports to seek reconsideration of the April 3 Order under Federal Rules of Civil Procedure 59 and 60 and Local Rule 6.3. But because the April 3 Order is not a "judgment" or "final judgment," neither Rule 59(e) nor Rule 60(b) applies. In re Palermo, No. 08 Civ. 7421 (RPP), 2011 WL 446209, at *4 (S.D.N.Y. Feb. 7, 2011); see also Floyd v. City of New York, 813 F. Supp. 2d 457, 464 (S.D.N.Y. 2011) ("Because that decision did not fully adjudicate the parties' claims, it was not appealable and thus not final for the purposes of Rule 60(b)."). Rather, "the only ground available for [BNYM] to move for reconsideration is under Local Civil Rule 6.3." In re Palermo, 2011 WL 446209, at *4.

A motion for reconsideration under Local Civil Rule 6.3 "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "It is implicit in this language that a motion for reconsideration cannot assert new arguments or claims which were not before the court on the original motion and consequently cannot be said to have been considered." Koehler v. Bank of Bermuda, Ltd., No. M18-302 (CSH), 2005 WL 1119371, at *1 (S.D.N.Y. May 10, 2005) (emphasis in original). In other words, "Rule 6.3 is intended to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision then plugging the gaps of a lost motion with additional matters.'" SEC v. Ashbury Capital Partners,

4

L.P., No. 00 Civ. 7898 (RCC), 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting Carolco Pictures, Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)). Reconsideration is not an invitation for parties to "treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings." De Los Santos v. Fingerson, No. 97 Civ. 3972 (MBM), 1998 WL 788781, at *1 (S.D.N.Y. Nov. 12, 1998). "The standard is strict and the decision is within the sound discretion of the district court." Robbins v. H.H. Brown Shoe Co., No. 08 Civ. 6885 (WHP), 2009 WL 2496024, at *1 (S.D.N.Y. July 22, 2009) (internal quotation marks omitted).

II.   Applicability of the TIA

A. Section 304(a)(1)

BNYM contends that this Court overlooked certain legal and factual issues in denying its motion to dismiss Plaintiffs' TIA claims regarding the New York certificates. As in its original moving papers, BNYM asserts that the New York certificates are exempt from the TIA because they are equity securities. However, BNYM points to no controlling legal authorities or factual matters that this Court overlooked. Rather, BNYM argues that this Court improperly rested its conclusion on an application of the factors that the IRS considers in differentiating debt securities from equity securities. See TIFD III-E, Inc. v. United States, 459 F.3d 220, 235 n.15 (2d Cir. 2006) (quoting IRS Notice 94-47, 1994-19 I.R.B. 9 (Apr. 18, 1994)).

But this Court did not rely exclusively on those factors. Rather, this Court concluded that the New York certificates more closely resembled debt than equity and observed that many courts have characterized mortgage-backed securities similar to the New York certificates as "debt." See, e.g., LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424

5

F.3d 195, 200 (2d Cir. 2005); CWCapital Asset Mgmt., LLC v. Chi. Props., LLC, 610 F.3d 497, 499 (7th Cir. 2010) (Posner, J.); Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 182 (S.D.N.Y. 2011) ("[A]s many courts have observed, pass-through certificates are structurally similar in form and function to bonds issued under an indenture."); In re Sec. Capital Assurance Ltd. Sec. Litig., 729 F. Supp. 2d 569, 575 (S.D.N.Y. 2010) (referring to certificates in residential mortgage-backed securities as "debt securities"); Trust for Certificate Holders of Merrill Lynch Mortg. Passthrough Certificates Series 1999-C1 v. Love Funding Corp., No. 04 Civ. 9890 (SAS), 2005 WL 2582177, at *1 (S.D.N.Y. Oct. 11, 2005) ("These certificates are essentially bonds secured by a pool of commercial mortgages that the Trust has purchased from lenders."). To the extent that BNYM challenges this Court's reliance on these decisions, it merely repeats arguments that this Court previously considered and rejected.

BNYM also argues that the New York certificates should not be characterized as debt because they do not reflect an unconditional promise to pay a sum certain. According to BNYM, such an obligation is absent because the duty to pay is contingent on the mortgagors' making their principal and interest payments. But this argument is unavailing, as "crediting it would ignore that the obligation to pay certificate-holders always exists; that obligation, however, cannot be met if individual mortgagors default on their principal and interest payments." Policemen's Annuity & Benefit Fund of Chi. v. Bank of Am., NA, ---F. Supp. 2d----, 2012 WL 6062544, at *16 (S.D.N.Y. 2012) (emphasis in original).

Finally, BNYM and its amici cite, inter alia, an SEC no-action letter from 1988 and Department of Labor guidance from 1996 for the proposition that the New York certificates are equity securities. But these agency pronouncements are not "controlling," and this Court did

not overlook them. See Ivan Visin Shipping, Ltd. v. Onego Shipping & Chartering B.V., 543 F. Supp. 2d 338, 339 (S.D.N.Y. 2008) ("Controlling authority means decisions of the Second Circuit Court of Appeals or the U.S. Supreme Court[.]" (citation omitted)). In any event, these informal agency pronouncements are entitled only to "respect proportional to [their] 'power to persuade[.]'" Mead, 533 U.S. at 235 (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)). And the cursory agency pronouncements on which BNYM and its amici rely lack persuasive power. Accordingly, this Court declines to reconsider its conclusion that the New York certificates are debt securities to which the TIA applies.

B. Section 304(a)(2)

BNYM also argues—for the first time—that the New York certificates are exempt under section 304(a)(2) of the TIA because they are "certificates of interest or participation in two or more securities having substantially different rights and privileges[.]" 15 U.S.C. § 77ddd(a)(2). But it cites no controlling law that this Court overlooked in reaching the opposite conclusion. To the contrary, BNYM supports its argument with a citation to a single district court opinion from the Eastern District of Pennsylvania. See Lavin v. Data Sys. Analysts, Inc., 443 F. Supp. 104, 109 (E.D. Pa. 1977). Besides the obvious fact that Lavin is not "controlling," that opinion does not address section 304(a)(2) at all. More fundamentally, "[a] motion for reconsideration is not an opportunity for making new arguments that could have been previously advanced, nor is it a substitute for appeal." In re Optimal U.S. Litig., 813 F. Supp. 2d 383, 387 (S.D.N.Y 2011) (internal quotation marks and footnotes omitted). Accordingly, this Court declines to consider new arguments for dismissal that BNYM failed to raise in its original briefs.

7

BNYM also contends that this Court did not afford adequate deference to the conclusory statements regarding section 304(a)(2) on the SEC's website. In the April 3 Order, this Court declined to grant Skidmore deference to these statements. According to BNYM, however, the SEC statements merit heightened deference because they are "generally applicable," Estate of Landers v. Leavitt, 545 F.3d 98, 110 (2d Cir. 2008), and the TIA is part of "a large and complex regulatory scheme[.]" Cmty. Health Ctr. v. Wilson-Coker, 311 F.3d 132, 138 (2d Cir. 2002). BNYM also observes that the Second Circuit has afforded Skidmore deference to positions adopted by the SEC in an amicus brief. See In re New Times Sec. Servs., Inc., 371 F.3d 68, 82-83 (2d Cir. 2004). But an agency's amicus brief stands on a far different footing than unattributed statements on a website. An SEC amicus brief reflects the considered views of the Commission. See 17 C.F.R. § 200.21(a). By contrast, the SEC Division of Corporate Finance expressly cautions that the interpretations on its website "are not rules, regulations, or statements of the Commission" and that "the Commission has neither approved nor disapproved these interpretations." Division of Corporate Finance, Compliance and Disclosure Interpretations, http://www.sec.gov/divisions/corpfin/cfguidance.shtml (last visited Feb. 14, 2013). Moreover, that SEC website now states that "the staff is considering [its position] in light of" the April 3 Order. Trust Indenture Act of 1939, Questions and Answers of General Applicability, http://www.sec.gov/divisions/corpfin/guidance/tiainterp.htm (last visited Feb. 14, 2013).

In any event, BNYM asserts these arguments for the first time in support of its motion for reconsideration. At the motion to dismiss stage, BNYM cited the SEC website only in its reply brief and asserted that the statements deserved "some deference." Mead, 533 U.S. at

234. As this Court concluded in the April 3 Order, the conclusory statements on the SEC's website are "beyond the Chevron pale." Mead, 533 U.S. at 234. And this Court rejects BNYM's attempt to advance novel theories on reconsideration. See In re Optimal, 813 F. Supp. 2d at 387.

III.   Events of Default Under the Delaware Indenture

BNYM also seeks reconsideration of this Court's conclusion that Plaintiffs adequately alleged "events of default" under the Delaware Indenture. But, again, BNYM points to no "controlling decisions or data that the court overlooked[.]" Shrader, 70 F.3d at 257. Rather, BNYM relitigates questions that this Court already resolved and attempts to introduce new theories for dismissal. To the extent BNYM contends that Plaintiffs failed to allege that the "issuer"—as opposed to the "master servicer"—had any relevant duties, its cramped reading of Plaintiffs' allegations reflects a misunderstanding of the Rule 12(b)(6) standard. See Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012) (on a motion to dismiss, courts "accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff" (internal quotation marks and citation omitted)). And this Court declines BNYM's invitation to disregard the "strict" standard for reconsideration. Shrader, 70 F.3d at 257. Accordingly, BNYM's motion for reconsideration is denied.

IV.   Interlocutory Appeal

Alternatively, BNYM requests that this Court certify the April 3 Order for interlocutory appeal. A district court may certify an order for interlocutory appeal if "the district judge 'is of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially

9

advance the ultimate termination of the litigation.'" United States v. Culbertson, 598 F.3d 40, 45 (2d Cir. 2010) (quoting 28 U.S.C. § 1292(b)).

The question whether the TIA applies to the New York certificates is controlling because reversal of the April 3 Order, "even though not resulting in dismissal, could significantly affect the conduct of the action[.]" Primavera Familienstifung v. Askin, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001). Further, the applicability of the TIA to the New York certificates raises "novel and complex" issues that could impact a large number of cases. In re Currency Conversion Fee Antitrust Litig., No. M 21-95, 2005 WL 1871012, at *3 (S.D.N.Y. Aug. 9, 2005). Another court in this District recently held that the TIA applies to mortgage-backed securities similar to those at issue here. See Bank of Am., 2012 WL 6062544, at *16. But BNYM and its amici advance arguments for reconsideration that—while beyond the scope permitted by Local Civil Rule 6.3—underscore the existence of substantial grounds for difference of opinion. In short, the applicability of the TIA to mortgage-backed securities remains unsettled, contributing to industry uncertainty.

While this action will continue irrespective of any ruling by the Court of Appeals, it may be considerably streamlined if the claims involving the twenty-five New York trusts are dismissed. Under these circumstances, the prompt resolution of this issue on appeal may materially advance the termination of this litigation. See Transp. Workers Union, Local 100 v. N.Y.C. Transit Auth., 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005) ("An immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or to shorten the time required for trial.") (internal footnote and

quotation marks omitted).  Accordingly, this Court certifies the April 3 Order for interlocutory appeal.

## CONCLUSION

For the foregoing reasons, BNYM's motion for reconsideration is denied. Further, this Court certifies its Memorandum & Order dated April 3, 2012 for interlocutory appeal under 28 U.S.C. § 1292(b).  Any party seeking leave for the Court of Appeals to hear an interlocutory appeal shall direct its application to the Court of Appeals within ten days.  See 28 U.S.C. 1292(b).   The Clerk of Court is directed to terminate the motion pending at ECF No. 38.

Dated: February 14, 2013
      New York, New York

SO ORDERED:

_____
     WILLIAM H. PAULEY III
             U.S.D.J.

*Counsel of Record:*

David R. Scott, Esq.
Beth A. Kaswan, Esq.
Deborah Clark-Weintraub, Esq.
Joseph P. Guglielmo, Esq.
Max R. Schwartz, Esq.
Scott & Scott, LLP
500 Fifth Avenue, 40th floor
New York, NY 10110

Anne L. Box, Esq.
Scott & Scott, LLP
707 Broadway, Suite 1000
San Diego, CA 92101

Geoffrey M. Johnson, Esq.
Scott & Scott, LLP
12434 Cedar Road, Suite 12
Cleveland Heights, OH 44106
*Counsel for Plaintiffs*

Matthew D. Ingber, Esq.
Paula G. Lin, Esq.
Christopher J. Houpt, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY 10019
*Counsel for Defendant*