February 4, 2014

**VIA ECF and HAND DELIVERY**

Hon. William H. Pauley III
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

    Re:    *Retirement Board v. The Bank of New York Mellon,* No. 11-cv-5459 (WHP)
            Motion to Quash or For Protective Order re 30(b)(6) Depositions

Dear Judge Pauley:

    Pursuant to Sec. III(A)(iv) of the Court's Individual Practices and Loc. Civ. Rule 37.2, the parties jointly submit this letter regarding a discovery dispute concerning Fed. R. Civ. P. ("FRCP") 30(b)(6) deposition notices (the "Notices," attached hereto as Exhibits A to C) that were served on December 26, 2013 by Defendant The Bank of New York Mellon ("BNYM") on each of the Plaintiffs.[1]  The Topics in each Notice are as follows:

1. Losses suffered by Plaintiffs as a result of its investments in the Covered Trusts, including Plaintiffs' response to Interrogatory 6[2] and updated calculation of damages.

2. Losses suffered by the proposed class as a result of its investments in the [Trusts], including Plaintiffs' response to Interrogatory 6 and updated calculation of damages.

    a. In particular, explain Plaintiffs' position regarding how damages to the class exceed the $8.5 billion negotiated by the Trustee, BofA and Institutional Investors.

3. Plaintiff's securities monitoring agreement with Scott+Scott [as identified by Bates number, separately, for each respective Plaintiff], as well as other similar agreements.[3]

    Plaintiffs request, pursuant to FRCP 26 and 45, that the Court quash the Notices; BNYM disagrees.  Plaintiffs' counsel, William Fredericks and Max Schwartz of Scott +Scott, Attorneys at Law LLP ("S+S"), and BNYM's counsel, Paula Lin and Lisa Plush of Mayer Brown LLP, met and conferred regarding the Notices (among other items) by telephone on January 6 and 9, 2014.

**Plaintiffs' Position**

    **A. BNYM's Request to Re-Depose Each Plaintiff on Losses and Damages**

    Representatives of each Plaintiff have already been deposed in this action (after the filing

---

[1] The Plaintiffs that BNYM seeks to redepose are (a) the City of Grand Rapids Police & Fire Retirement System ("Grand Rapids P&F"), (b) the City of Grand Rapids General Retirement System ("Grand Rapids General"), and (c) the Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago ("Chicago").
[2] A copy of Plaintiffs' Supplemental and Amended Responses and Objections to BNYM's First Set of Interrogatories is attached as Exhibit D.
[3] Copies of each Plaintiff's retainer agreement, which BNYM's Notices refer to as "securities monitoring agreements," are attached hereto as Exhibits E-G.  Each such agreement is substantially identical in form.

of the operative complaint in July 2013), pursuant to BNYM Notices dated June 12, 2013. To the extent BNYM now seeks to compel further deposition testimony from lay representatives of Chicago and Grand Rapids on damages-related issues, BNYM's Notices should be quashed.[4]

First, a class representative need not have particularized knowledge of the law governing, or the formulas for determining, damages in complex class action litigation. *See, e.g., In re Vivendi Univ. S.A.,* 242 F.R.D. 76, 88-89 (S.D.N.Y. 2007) (lack of class representatives' personal knowledge on matters such as damages does not affect their adequacy, where damages will be subject of expert testimony) (collecting cases). To **re-**depose lay class representatives to obtain further details on damages issues, beyond those that have already been provided in Plaintiffs' interrogatory responses, is thus inappropriate. Moreover, each Plaintiff has produced documents reflecting their own transactions in the Trusts, so BNYM can verify the amount of each Plaintiff's realized out-of-pocket losses on their MBS transactions and of their unrealized out-of-pocket losses on MBS positions that they may still hold. BNYM's *non*-class action cases are readily distinguished, and even *In re Veeco Instr., Inc. Sec. Litig.,* 2007 WL 274800, at *2 (S.D.N.Y. 2007), also cited by BNYM, did <u>not</u> order any depositions reopened, but instead expressly stated that "Lead Plaintiff may supplement [its interrogatory] responses [on damages] as they deem appropriate after expert discovery."

Alternatively, to the extent BNYM seeks to obtain expert testimony from Plaintiffs, its Notices are premature given that no schedule has yet been established for expert discovery. *See* FRCP 26(a)(2)(C) & 26(b)(4); *see also Kingsway Fin'l Serv. Inc. v. PriceWaterhouseCoopers LLP,* No. 03 Civ. 5560, 2006 WL 1520227, at *1, (S.D.N.Y. June 1, 2006) ("[w]here, as here, the plaintiff's damages are not the product of a simple mathematical calculation and require expert testimony, the damages calculations … may be produced as part of the party's Rule 26(a)(2) disclosures"). Similarly, requests to obtain detailed interrogatory responses on damages have been denied as an end run around Rule 26's procedures for conducting expert discovery. *See, e.g., New Haven Temple SDA Church v. Cons. Edison Corp.,* 1995 WL 358788, *5 (S.D.N.Y. June 13, 1995) ("At some point, sufficiently in advance of the filing of the joint pre-trial order to avoid surprise," the defendant is entitled to a detailed statement of the plaintiff's damages theory, but it "is not [at this stage] entitled to a detailed summary of plaintiff's proof, particularly to the extent that calculations of an expert may be required") (denying motion to compel without prejudice to defendant's rights to take expert discovery on damages issues).[5]

Finally, to the extent that BNYM seeks deposition testimony to "explain Plaintiffs' position regarding how damages to the class exceed the $8.5 billion negotiated by the Trustee, Bank of America and Institutional Investors," BNYM seems to be seeking lay opinion regarding

---

[4] A copy of the June 12 Notice to Grand Rapids General, which is substantively identical in form to the Notices served on Chicago and on Grand Rapids P&F, is attached hereto as Exhibit H.

[5] BNYM asserts that Plaintiffs did not disclose that their damages would be based, in part, on a statistical sampling of mortgage loans until Plaintiffs served their amended interrogatory response this fall. However, use of statistical sampling has become common in MBS litigation, and the Declaration of Michael P. Salve, Ph.D. (filed July 8, 2013 in support of Plaintiffs indicative ruling motion) made clear that Plaintiffs intended to use statistical sampling to show the extent to which loan defects infected the Covered Trusts at issue here. That damages calculations here will involve using experts with PhD's in statistics only confirms the extent to which BNYM's efforts to re-depose lay fund administrators on "damages calculations" serves no useful purpose, and confirms that Lead Plaintiffs are not "inadequate" where they intend to use qualified experts to calculate damages.

the hypothetical effect of a proposed settlement that, as of today, has yet to become final in the wake of Justice Kapnick's approved-in-part-and-denied-in-part decision of last Friday. Once again, issues relating to the impact (if any) of any final orders issued by Judge Kapnick in this case are not appropriate subjects for re-deposing lay representatives of the Plaintiffs. Indeed, even to the extent that such subjects may ultimately become appropriate issues for the lawyers and damages experts to address, Plaintiffs respectfully submit that it is inefficient and premature to have lawyers and experts (or the Court) address them until there is a final Order actually approving a settlement in the matter before her.

### B. BNYM's Request to Re-Depose Each Plaintiff on Its Securities Monitoring Agreement or "Other Agreements" With Their Counsel Should Be Denied

At the prior depositions, BNYM had ample opportunity to ask each Plaintiff designee appropriate questions about their Fund's relationship with their undersigned counsel, S+S, including questions about any monitoring or other agreements they may have had with S+S prior to the commencement of this action. However, BNYM chose to ask few questions on this subject, even though such questions (in Plaintiffs' counsel's experience) are common at depositions of class representatives. Having waived the chance to make full inquiries on this subject at the prior Grand Rapids and Chicago depositions, BNYM offers no good cause under FRCP 30(a)(2) for seeking to *re-*depose any Plaintiffs on this subject.

In response, BNYM notes that the "monitoring agreements" were not produced until after each Plaintiff was deposed in July 2013. However, in this District, a plaintiff is typically not even required to produce its retainer or monitoring agreements with counsel. Thus there was no prejudice as a matter of law to the extent that BNYM lacked these documents when it deposed Plaintiffs in July. *See Ft. Worth Empl. Ret. Fund v. J.P. Morgan Chase & Co.,* No. 09 Civ. 3701, 2013 WL 1896934 (S.D.N.Y. May 7, 2013) (denying motion to compel production of lead plaintiff's retainer and monitoring agreements, as defendant could still fully "question the lead plaintiffs at deposition on their adequacy to represent the class without … disclosure of the … agreements"). Indeed, it would be grossly unfair for Plaintiffs to now be penalized (in the form of reopened depositions) for having agreed to produce documents (after their earlier depositions) that they were under *no* obligation to produce in the first place.

Moreover, BNYM offers no basis for suggesting that any testimony from any re-opened deposition would add anything to the text of the monitoring agreements themselves, which BNYM already has copies of. Nor does BNYM argue that the content of the monitoring agreements gives rise to any material contradictions with any prior witnesses' testimony that might somehow warrant reopening their prior depositions on the grounds that the (here non-existent) contradictions need to be explored. For example, BNYM concedes that Ms. Korzen readily noted the existence of a monitoring agreement at her July deposition, although BNYM did not seriously pursue the subject at that deposition. *See* BNYM's fn. 14 below.

BNYM also fails to identify anything improper in the monitoring agreements (or that remotely hints at any impropriety) that would warrant reopened depositions. *See, e.g., City of Livonia Empl. Ret. Sys. v. Wyeth,* 284 F.R.D. 173 (S.D.N.Y. 2012) (rejecting argument that existence of monitoring agreement between proposed class representative and its counsel had

any bearing on its adequacy under FRCP 23, and noting that "courts routinely appoint institutional investors with monitoring agreements as lead plaintiffs and class representatives") (citations omitted); *cf. City of Pontiac,* 844 F. Supp. 2d 498, 501 (S.D.N.Y. 2012) (monitoring agreement that went "far beyond any traditional contingency arrangement" might be suspect, but finding nothing disqualifying in monitoring agreement at issue).[6] The Notices should be quashed.

**BNYM's Position**

BNYM issued new 30(b)(6) notices to Plaintiffs as a result of two events that occurred after the first attempt at 30(b)(6) depositions.  *First*, Plaintiffs served an amended interrogatory response, subsequently verified by employees of each Plaintiff, setting forth a completely new damages theory.  *Second*, even though BNYM's *2011* document requests called for the production of securities monitoring agreements, Plaintiffs failed to produce any until August and November 2013—after they were faced with 30(b)(6) testimony that Grand Rapids had in fact entered into such agreements with S+S.  Under the circumstances, and when each Plaintiff's 30(b)(6) witness was woefully unprepared to address inquiries on damages, Plaintiffs have no basis to attempt to prohibit this discovery.  The Court should flatly deny the request to "quash" the Notices,[7] because Plaintiffs fail to demonstrate under Rule 26 that depositions seeking information about their alleged losses and monitoring agreements are unduly burdensome or duplicative.  *Koch v. Greenberg,* 2012 WL 1449186, at *1 (S.D.N.Y. Apr. 13, 2012).[8]

**A.     BNYM Is Entitled to Lay Testimony Regarding Plaintiffs' Latest Damages Theory**

On November 22, 2013, Plaintiffs amended their response to BNYM's interrogatory on damages.[9]  That interrogatory is hardly novel—it is the standard damages interrogatory that Local Rule 33 requires plaintiffs to answer at the commencement of discovery.  S.D.N.Y. R. 33.3(a); *see also In re Veeco*, 2007 WL 274800, at *2 (S.D.N.Y. Jan. 29, 2007) (directing lead plaintiff to respond to interrogatories).  Plaintiffs now baldly assert that any further discovery on the topic of damages would be "plainly inappropriate."  But as courts within this circuit have recognized, BNYM is entitled to lay witness testimony on damages.  *See, e.g., Ritchie Risk-Linked Strategies Trading (Ireland), Ltd., v. Coventry First LLC*, 280 F.R.D. 147, 161-62 (S.D.N.Y. 2012) (re-opening fact discovery, and rejecting as insufficient plaintiffs' offer of a 2-hour 30(b)(6) deposition on damages, to allow defendants to explore plaintiffs' amended damages interrogatory response, and noting that "Defendants suffered substantial prejudice … without a full understanding of Plaintiffs' damages claim, and from entering into the expert phase of discovery without having had the opportunity to explore the factual bases of that claim"); *Covermat Corp. v. St. Paul Fire and Marine Ins. Co.*, 2007 WL 2743679, at *2-*3 (E.D.N.Y. Sept. 18, 2007) (requiring 30(b)(6) testimony regarding alleged damages).  The case is

---

[6]  That BNYM waited until December 26, 2013 to try to redepose Plaintiffs on their retainer agreements is also telling, as it indicates that BNYM is more interested in trying to use its Notices as leverage to extract concessions in negotiations over Plaintiffs' unrelated discovery demands than it is in trying to obtain relevant information.

[7]  Plaintiffs' request is incorrectly styled as a motion to quash.  We will rely on standards applicable to protective orders under Rule 26(b)(2)(C).  *Dealer Comp. Srvcs. Inc. v. Curry*, 2013 WL 499520, at *1 (S.D.N.Y. Feb 7, 2013).

[8]  BNYM has demonstrated good cause for these depositions throughout this letter.  If necessary, BNYM hereby formally requests leave of Court to take these follow up depositions.

[9]  Interrogatory 6 reads:  "Identify and describe with particularity the damages—including each element of actual or threatened loss, injury, and/or economic damage, and the precise amount thereof which you seek to recover—that you contend you or any Proposed Class Member sustained as a result of your investment in the Covered Trusts."

even more appropriate where, as here, Plaintiffs purport to represent a class of certificateholders who allegedly have been harmed by BNYM's conduct, and will owe fiduciary duties to any certified class. *See Darvin v. Int'l Harvester Co.*, 610 F. Supp. 255, 257 (S.D.N.Y. 1985) (failure to respond to reasonable discovery requests and relevant deposition questions indicated plaintiff was not suitable to fulfill fiduciary obligations of a class representative); *see also Hochberg v. Howlett*, 1994 WL 9677, at *2 (S.D.N.Y. Jan. 10, 1994).

Plaintiffs' amended interrogatory response bears almost no resemblance to the damages theory that they identified at the time of the July 30(b)(6) depositions (or, indeed, the theory that they describe in this letter).[10] Plaintiffs' employees, not their expert witnesses, *verified* the response. They did not assert, as they seem to do in this letter, that they have no discoverable information about damages. Even if they did assert that under oath, that response—that putative class representatives have no idea how much money they lost on these investments or how much they seek to recover in this case—is itself plainly relevant to class certification.

Nor did Plaintiffs raise any such objection to the last 30(b)(6) depositions. Instead, they appeared having failed to prepare on the noticed topic, "Losses suffered by Plaintiffs as a result of its investments in the Covered Trusts." Mr. Kunz, Chicago's representative, testified that he did not know how losses were calculated, who calculated the losses, or what the losses were.[11] Kunz Tr., Ex. I, at 132-33. Ms. Korzen, Grand Rapids' representative, testified that she did not understand (i) which Countrywide certificates Grand Rapids had sold, (ii) whether Grand Rapids was claiming damages associated with the certificates it was still holding, (iii) what the "excess credit losses" or "principal losses" described in the interrogatory response she verified could be, and (iv) whether the damages Grand Rapids was claiming had changed with the filing of the Second Amended Complaint. Korzen Tr., Ex. J, at 178:16-179:8; 182:15-21; 182:3-5; 184:6-185:6. That BNYM's counsel chose not to walk out after 15 minutes of substantive testimony (as Plaintiffs' counsel unreasonably did at one 30(b)(6) deposition) and then absurdly threaten sanctions (as Plaintiffs' counsel did at two 30(b)(6) depositions), does not excuse these witnesses' lack of preparation or somehow make a second attempt unduly burdensome.

Moreover, if, as Plaintiffs assert above and contrary to their verified interrogatory response, they are seeking to recover "out-of-pocket" losses (which are, at best, a *cap* on, not a *measure* of, damages), BNYM is still entitled to discovery on what those losses actually are. It is not the law in this District that production of a few documents[12] or interrogatory answers[13] precludes any other discovery on the same topics. (If that purported rule were applied consistently, the pointless depositions of BNYM, Bank of America, Carter Ledyard, McGuireWoods, and several of their employees should never have occurred.)

---

[10] Plaintiffs waited until November 22 to amend their damages interrogatory answer to assert that any purported damages will be based on a statistical sampling of mortgage loans. The new response includes the calculation of damages with respect to mortgage loan document defects that they say were unremedied and a diminution of assets of Countrywide Home Loans, Inc. Supp. Resp. at 4-6.

[11] Mr. Kunz also did not know (i) how PABF made the decision to bring the lawsuit (Tr., Ex. I, at 143-44), (ii) how the Fund was managing the litigation (*id.* at 149-50); or (iii) facts relating to PABF's status as class representative.

[12] *See, e.g., Seneca Ins. Co. v. Wilcock*, 2007 WL 415141, at *4-*5 (S.D.N.Y. Feb. 5, 2007) (rejecting argument that discovery should be curtailed because plaintiff previously had access to the pertinent books and records).

[13] *Dongguk Univ. v. Yale. Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010) (noting that a party should not be deprived of a 30(b)(6) deposition "just because the topics proposed are similar to those contained in documents provided or interrogatory questions answered."); *New Jersey v. Sprint Corp.*, 2010 WL 610671, at *2 (D. Kan. Feb. 19, 2010).

As noted above, Plaintiffs' designated representatives could not answer even basic questions about their holdings, let alone their out-of-pocket losses. Nor is it tenable to suggest that, if BNYM knows Plaintiffs' holdings, it can be forced to guess at their "unrealized losses": If Plaintiffs' own representatives were unable do that, how can BNYM be expected to? And the story cannot end with the initial alleged loss: Efforts, if any, to mitigate damages are also relevant. There is no serious dispute that Plaintiffs' knowledge about their own alleged losses (or their lack of such knowledge) is relevant and discoverable. *See Jacob v. Duane Reade*, 293 F.R.D. 578, 588 (S.D.N.Y. 2013) (explaining importance of class action damage calculations).

Even if the topics do require some modicum of expertise, Plaintiffs are institutional fiduciaries, collectively managing billions of dollars, and they must testify about facts in their knowledge, however sparse. *Kingsway Fin's Servs. Inc. v. PriceWaterhouseCoopers LLP*, cited by Plaintiffs, makes clear that the complexity of a damages claim excuses only the detail that must be disclosed at the outset of a case; it does not hold that complex damages theories are categorically immune from fact discovery. 2006 WL 1520227, at *1; s*ee also Nippo Corp. v. AMEC Earth & Envtl., Inc.*, 2009 WL 4798150, at *3 (E.D. Pa. Dec. 11, 2009) ("[A] 30(b)(6) lay corporate witness . . . would certainly be capable of discussing the relevant underlying facts and surrounding evidence that make up the calculations and assert damages.").

**B.    BNYM Is Entitled to Depose Plaintiffs on the Security Monitoring Agreements**

Plaintiffs' securities monitoring agreements with S+S, requested months before but produced only *after* the Grand Rapids 30(b)(6) deposition, compel further depositions.[14] Courts in this District consider monitoring agreements when determining the issue of class certification, and more specifically in determining whether plaintiffs are effectively monitoring the litigation and whether monitoring counsel have a conflict of interest. *See Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing and Securitization, LLC*, 616 F. Supp. 2d 461, 464-66 (S.D.N.Y. 2009) (discussing effect of agreement between lead plaintiff and counsel on adequacy determination). It is remarkable that in the same breath that they accuse BNYM of harassment, Plaintiffs cite their decision to wait until after the deposition to produce what they concede are discoverable documents as an excuse to block further discovery.[15]

\*   \*   \*

Unlike Plaintiffs, BNYM has attempted to avoid bringing an endless series of discovery disputes before the Court. We have struggled for the past two-plus years to understand Plaintiffs' damages theories, because they have refused, to this day, to provide a comprehensible response to the damages interrogatory. We have taken a total of three depositions, two of which were largely thwarted by Plaintiffs' patent failure to adequately prepare a representative. Plaintiffs have engaged in a desperate, rambling, and seemingly endless search for some theory of liability and damages, however far detached from the pleadings, placing inordinate expense on BNYM, other parties to the securitizations, and now their law firms. By contrast, we seek only the most basic and directly relevant factual information—how much money Plaintiffs seek to recover in this case, and why. The Court should deny the motion for a protective order.

---

[14] Plaintiffs' claim that BNYM did not "seriously" pursue the subject of the (then unproduced) monitoring agreements at Ms. Korzen's deposition is both odd and belied by the transcript. Korzen Tr., Ex. J, at 230:14-235:3.

[15] *Ft. Worth Employees*, upon which Plaintiffs rely, is inapposite. Here, BNYM should be able to explore the provision stating that S+S would "prosecute investor and shareholder claims" if directed, and, in the case of Grand Rapids, the incorporated "Securities Litigation Policy" (including §V, Retention of Outside Litigation Counsel).

Respectfully,

| | |
|---|---|
| SCOTT+SCOTT, ATTORNEYS AT LAW, LLP | MAYER BROWN LLP |
| /s/ William C. Fredericks | /s/ Paula Garrett Lin |
| Beth A. Kaswan | Matthew D. Ingber |
| William C. Fredericks | Paula Garrett Lin |
| Max Schwartz | Michael Martinez |
| The Chrysler Building | Christopher J. Houpt |
| 405 Lexington Avenue, 40th Floor | 1675 Broadway |
| New York, NY 10174 | New York, NY 10019 |
| Tel: (212) 223-9360 | Tel: (212) 506-2500 |
| Fax: (212) 223-6334 | Fax: (212) 262-1910 |
| | |
| *Counsel for Plaintiffs* | *Counsel for The Bank of New York Mellon* |