# EXHIBIT J

```
              UNITED STATES DISTRICT COURT

            SOUTHERN DISTRICT OF NEW YORK

--------------------------------------x
RETIREMENT BOARD OF THE POLICEMEN'S
ANNUITY AND BENEFIT FUND OF THE CITY
OF CHICAGO, WESTMORELAND COUNTY
EMPLOYEE RETIREMENT SYSTEM, CITY OF
GRAND RAPIDS GENERAL RETIREMENT
SYSTEM, and CITY OF GRAND RAPIDS
POLICE AND FIRE RETIREMENT SYSTEM (on
Behalf of Themselves and Similarly
Situated Certificate Holders),

                          Plaintiffs,

        Vs.

THE BANK OF NEW YORK MELLON, (as
Trustee Under Various Pooling and
Servicing Agreements),

                          Defendant.
--------------------------------------x


           VIDEOTAPED DEPOSITION OF PEGGY KORZEN

                  Grand Rapids, Michigan

                 Thursday, July 11, 2013

                       9:30 a.m.




Reported by:
QUENTINA R. SNOWDEN, CSR
JOB NO. 30057
```

178

1      PEGGY KORZEN

2          MR. SCHWARTZ:  Objection.  Calls for

3      legal conclusion, vague.  You can answer.

4          THE WITNESS:  Yeah, I mean it's set

5      forth in the Complaint, but, our investment

6      suffered losses because of the behavior of the

7      bank.

8      BY MS. LIN:

9      Q.    Did you -- when you say you've

10     suffered losses, are you referring to all of

11     the investments, even those that you're still

12     holding?

13     A.    I would have to look at the individual

14     securities.  I am not sure of each one

15     individually how it performed.

16     Q.    Okay.  So are you -- but are you

17     contending even if you haven't sold an

18     investment, if the value of the security has

19     declined that you suffered a loss?

20         MR. SCHWARTZ:  Objection.  The

21     allegation is in the Complaint.

22         THE WITNESS:  Yeah, and I'm not sure.

23     BY MS. LIN:

24     Q.    He's allowed to tell me that the

25     allegations are in the Complaint, but I'm

179

1    PEGGY KORZEN
2    allowed to ask you.  So you're not sure if
3    you're claiming that you've suffered losses
4    even if you're holding onto those securities
5    still and haven't sold them?
6        A.   Without further analysis, I wouldn't
7    be able to make a statement one way or the
8    other yet.
9            MS. LIN:  I'm deciding what to show
10   you first.  Okay.  I'm going to show you, let's
11   see -- it's the raw responses.  Let me just --
12   before you hand it, I want to make sure it's
13   the raw one.
14           MS. THROO:  This is the later one.
15           MS. LIN:  Yeah, I want the later one.
16   Thanks.  Okay.
17           (Deposition Exhibit 20 was marked
18   for identification.)
19           MS. LIN:  There should be one that's
20   been verified.
21           MR. SCHWARTZ:  It's dated September
22   7th.
23           MS. LIN:  Sorry.  I thought it was --
24   I know it's here somewhere and I'm just --
25           MS. THROO:  I know which one you're

```
 1                      PEGGY KORZEN
 2           BY MS. LIN:
 3           Q.    Okay.  Do you know what excess credit
 4      losses is referring to?
 5           A.    I don't.
 6           Q.    Okay.  Why don't you flip over to
 7      tables 3 and 4.
 8           A.    Uh-huh.
 9           Q.    Where it's the Grand Rapids Systems
10      funds.  Are these the trusts -- are these the
11      securitization trusts in which Grand Rapids has
12      at some point invested that are at issue in
13      this case?
14           A.    Yes.
15           Q.    Okay.  All right.  Sitting here today,
16      do you know whether Grand Rapids has sold any
17      of its investments in any of these trusts?
18           A.    I believe we have some of them.
19           Q.    But you don't know the specific
20      trusts?
21           A.    I don't know which ones.
22           Q.    Okay.  What does market value loss
23      represent in these tables?
24           A.    That would be the difference in market
25      value between the purchase price and current
```

184

1      PEGGY KORZEN

2          Q.  All right.  Let's just keep it simple.
3      Have you sold all of these securitizations?
4          A.  All of them?  No, I do not believe we
5      have.
6          Q.  What does "principal loss" mean?
7              MR. SCHWARTZ:  Again, objection.
8          Document speaks for itself.  If you don't know,
9          you don't have to answer.
10             THE WITNESS:  Yeah, I'm unsure of what
11         that would represent.
12             BY MS. LIN:
13         Q.  Okay.  But you're claiming a principal
14     loss; is that right?
15         A.  On those two securities, yes.
16         Q.  But you don't know what it is.
17             Okay.  So this, as Max pointed out,
18     the date of these Interrogatories is September
19     7th, 2012.  Have -- have the damages that
20     you're claiming in this case changed since you
21     filed your Second Amended Complaint?
22         A.  I've not calculated that recently,
23     so --
24         Q.  Have these sort of -- have the
25     components of damages that you're claiming

185

1           PEGGY KORZEN
2   changed; like are you still claiming market
3   value loss and principal loss as set out in
4   this table?
5       A.   I don't -- I don't know what the
6   losses are specifically right now.
7       Q.   Okay.  Okay.  Let's see.  I'm going to
8   direct your attention to the Complaint and
9   forgive me, I have to look and see what number.
10          MS. THROO:  19.
11          MS. CLARK-WEINTRAUB:  19.
12       BY MS. LIN:
13       Q.   It's Exhibit 19.  Okay.  I'd like to
14   turn your attention to paragraph 47 of the
15   Complaint, which is on page 21.
16       A.   Okay.
17       Q.   Okay.  The first sentence of this
18   paragraph refers to a May 15th, 2008, New York
19   Times article about a securities fraud
20   complaint brought against Countrywide by its
21   shareholders.
22          Are you familiar with that article?
23       A.   Nope.
24       Q.   Okay.  Do you expect that you would
25   have reviewed it on or about May 15th, 2008?

230

PEGGY KORZEN

1  
2  representative in this lawsuit?
3      A.  No.
4      Q.  Okay.  Do you expect that Grand Rapids
5  General Retirement Systems will receive
6  anything for its role as class representative
7  in this lawsuit?
8      A.  No.
9      Q.  Do you expect that Grand Rapids Police
10 and Fire will -- excuse me -- receive anything
11 for serving as class representative in this
12 lawsuit?
13     A.  No.
14     Q.  Okay.  When did you first come to
15 believe that BNY Mellon breached its
16 contractual and fiduciary duties to its
17 certificate holders in the mortgage
18 securitization trust at issue in this case?
19         MR. SCHWARTZ:  Objection.  You can
20 answer.
21         THE WITNESS:  In the Complaint, but it
22 was roughly two years ago.
23     BY MS. LIN:
24     Q.  So July of 2011?
25         MR. SCHWARTZ:  Objection.  You can

Brief.

231

1  PEGGY KORZEN

2       answer.

3            THE WITNESS:  Whatever is in the

4       Complaint.

5          BY MS. LIN:

6          Q.   Well, I don't know what's in the

7       Complaint sitting here, but does that sound

8       approximately correct?

9          A.   June, July, something like that.

10         Q.   Summer 2011?

11         A.   (Shook head in an affirmative manner.)

12         Q.   Okay.  And how did you come to believe

13      that?

14            MR. SCHWARTZ:  Objection -- pardon me,

15      don't -- you can answer.  Don't reveal any

16      privileged communications, and go on.

17            THE WITNESS:  Our attorneys advised us

18      that there might be an issue.

19         BY MS. LIN:

20         Q.   Okay.  Which attorneys advised you

21      that?

22         A.   Scott and Scott.

23         Q.   And were -- had you retained them as

24      your attorneys at that time?

25         A.   They perform securities monitoring

232

PEGGY KORZEN

services for us.

Q. Okay. What securities? I'm not looking for privileged information, but what securities monitoring services did Scott and Scott provide for the Retirement Systems?

A. They receive data feeds from our custodial bank and when there's a potential case, they review our securities, our holdings to see if we were affected by whatever it is that's involved in the case.

Q. Okay. So that work is not limited to the trusts that are at issue in this case; is that right?

A. That's correct.

Q. Okay. And for how long has Scott and Scott performed that service for you?

A. Oh, I just looked yesterday and I -- I think it was -- was it 2007, '8. I don't recall. But it's been --

Q. Okay.

A. -- several years now.

Q. Okay. Does -- do the Retirement Systems pay Scott and Scott a fee for that service?

```
                                                              233
1                         PEGGY KORZEN
2           A.    No.
3           Q.    Is that service governed by a contract
4     of any kind?
5           A.    We do have a securities monitoring
6     agreement.  It's in place with them.
7           Q.    Okay.
8           A.    One for each system.
9           Q.    Who were the attorneys at Scott and
10    Scott who performed this role?
11          A.    Could be any number of attorneys,
12    whoever they assigned.  We don't have one
13    specific attorney that -- that does the work.
14    It's whoever they deem appropriate.
15          Q.    Who is the attorney who signed the
16    contract for this work?
17          A.    I would have to review it, but I -- I
18    think David Goldberg signed it maybe.  I
19    wouldn't know for sure without looking at the
20    agreement.
21          Q.    Okay. Do -- do either of the
22    attorneys sitting in this room perform
23    securities monitoring services for you?  When I
24    say -- let me rephrase that.
25                Do either of the Scott and Scott
```

234

PEGGY KORZEN

2  attorneys sitting in this room provide

3  securities monitoring services for you?

4       A.  To be honest with you, I don't know

5  who does the actual nuts and bolts of it at the

6  firm.  I get a report every quarter.

7       Q.  And who prepares that report?

8       A.  I think it's been different people,

9  but I think David Goldberg.  Is that his last

10 name?

11      MR. SCHWARTZ: It's Goldberg or

12 Goldberger.

13      THE WITNESS: Sorry.  It's probably

14 the name I see most often.

15      MR. SCHWARTZ: That's the name.  I'm

16 not representing that it is or isn't the

17 person.  I actually don't know.

18      THE WITNESS: I have to look at the

19 reports, but that name does ring a bell to me.

20      BY MS. LIN:

21      Q.  Is that the person who e-mails the

22 reports to you?

23      A.  Some of them I think came from him and

24 some of them from probably someone who works

25 for him.  So it came from various sources.

```
                                                            235
 1                      PEGGY KORZEN
 2         Q.   Okay.
 3         A.   The firm.
 4         Q.   Okay.  Let's see.  Do you know what
 5   the proposed class period is for this class
 6   action?
 7              MR. SCHWARTZ:  Objection.  Allegations
 8   are in the Complaint.
 9              MS. LIN:  There's no allegation about
10   the class period in the Complaint so I would
11   like the witness's response.
12              THE WITNESS:  I would have to go back
13   and look through the documents more thoroughly
14   to know, but I believe it was in the mid-2000s.
15   I don't know exactly.
16         BY MS. LIN:
17         Q.   Going back to the mid-2000s?
18         A.   Yeah.
19         Q.   Does the -- does the class period have
20   an end date?
21              MR. SCHWARTZ:  Same objection.  You
22   can answer.
23              THE WITNESS:  Yeah, I'm not sure.
24         BY MS. LIN:
25         Q.   Okay.  Prior to filing your Complaint,
```