# EXHIBIT I

MAYER • BROWN

Mayer Brown LLP
1675 Broadway
New York, New York 10019-5820

Main Tel +1 212 506 2500
Main Fax +1 212 262 1910
www.mayerbrown.com

August 28, 2013

**VIA ELECTRONIC MAIL**

Matthew D. Ingber
Direct Tel +1 212 506 2373
Direct Fax +1 212 849 5973
mingber@mayerbrown.com

William C. Fredericks
Scott + Scott LLP
405 Lexington Avenue, 40th Floor
New York, NY 10174

Re:    *Retirement Board v. The Bank of New York
       Mellon,* (11-cv-05459) (WHP)

Dear Bill:

      We write in response to your August 22, 2013 letter in which you assert that The Bank of New York Mellon ("BNYM" or the "Bank") failed to produce a 30(b)(6) witness knowledgeable about the topics identified in Plaintiffs' June 13, 2013 Amended Notices of 30(b)(6) deposition (the "30(b)(6) topics").    We disagree.    Accordingly, we will neither produce additional documents within 10 days concerning the subject matters referenced in the 30(b)(6) notice nor produce another witness regarding the 30(b)(6) topics.

      We will not produce any additional documents because document discovery is over.    To the extent you asked for documents and we agreed to produce them (document request 11), you have received documents that hit on the agreed-upon search terms.    To the extent we objected to producing documents (document requests 12, 20 and 23), plaintiffs never pursued their requests. This all was discussed during a November 30, 2011 meet and confer and memorialized in a letter dated December 12, 2011.  Plaintiffs never objected.  Your request for additional documents is improper, baseless (for the reasons we discussed 20 months ago), and untimely.[1]

      We will not produce another Rule 30(b)(6) witness because we already produced a Rule 30(b)(6) witness.  Gerard Facendola, Managing Director of the Default Administration Group, was produced for a deposition on August 14, 2013, and he was prepared to give testimony on all 30(b)(6) topics.  Ms. Kaswan's termination of the deposition after only seventy-six minutes waives plaintiffs' right to another witness.  It also came at great cost to BNYM, given the considerable time spent by Mr. Facendola, BNYM, and its attorneys to prepare Mr. Facendola to cover all 30(b)(6) topics, including those Ms. Kaswan never bothered to inquire about.

      Rule 30(b)(6) witnesses are required to take reasonable steps to enable them to give knowledgeable testimony.  Patrick Lynch, et al., Business and Commercial Litig. in Federal Courts, Depositions, § 23.81 (Robert L. Haig ed., 3d ed. 2011).  A 30(b)(6) deposition is not a

---

[1]     As the Court noted on July 2, if there was any dispute about plaintiffs' entitlement to these documents, plaintiffs should have raised the issue in a timely manner.  (July 2, 2013 Hearing Tr. at 22-23).

Mayer Brown LLP operates in combination with other Mayer Brown entities with offices in Europe and Asia
and is associated with Tauil & Chequer Advogados, a Brazilian law partnership.

William C. Fredericks
August 28, 2013
Page 2

memory test. *Rahman v. Smith & Wollensky Restaurant*, No. 06 Civ. 6198(LAK)(JCF), 2009
WL 773344, at \*1 (S.D.N.Y. Mar. 18, 2009). A 30(b)(6) deponent must be knowledgeable about
the noticed topics—to the extent the topics are stated with reasonable particularity—and
prepared to provide answers that the witness in good faith understands to be within the scope of
the topic. *Id.* If one party believes that a company witness is not properly prepared, the burden
is on the complaining party to lay a proper foundation at the deposition so that the court can
determine the extent of the preparation. *Century 21 Real Estate, LLC v. All Prof'l Realty, Inc.*,
10-cv-2751(WBS)(GGH), 2012 WL 2116409 (E.D. Cal. June 6, 2012) (ruling no further Rule
30(b)(6) testimony was necessary).

　　　　Here, Mr. Facendola was prepared to testify regarding all matters reasonably available to
the Bank that he (and BNYM) believed to be within the scope of the 30(b)(6) topics. Ms.
Kaswan inexplicably never gave him the chance. In the seventy-six minute deposition, she spent
39 pages of transcript (approximately 56 minutes) on questions about Mr. Facendola's
employment history and his personal knowledge about topics far outside the scope of the
30(b)(6) topics. (*See, e.g.*, G. Facendola Dep. Tr. at 30-34 (questions regarding whether BNYM
established war rooms to manage issues during the financial crisis); 13, 26-29 (questions
regarding the nature of Mr. Facendola's direct dealings with monolines and holders); 18-21
(questions regarding organizational structure of default administration group and Mr.
Facendola's interactions with other BNYM employees)). She spent 2 pages (approximately 7
minutes) on his preparation for the deposition and learned, unremarkably, that it involved
meeting with counsel and reviewing documents.

　　　　In the remaining 8 pages of the transcript (approximately 12 minutes), Ms. Kaswan asked
questions that were largely extraneous to the noticed topics, never asked a single question about
topic 2, asked one line of questions purportedly about topic 3 (but really outside the scope of that
topic), never asked logical follow up questions, refused to aid Mr. Facendola's memory with
documents, and asked questions focused solely on Mr. Facendola's personal knowledge. In just
one example, Ms. Kaswan asked, "without my showing you particular documents, you don't
have any knowledge of who was involved with the creation of the supplements by which debt
was assumed in November of 2008?" (G. Facendola Dep. Tr. at 47:17-21). The question is
wildly ambiguous. To start, debt was actually assumed (presumably) through internal
Countrywide-Bank of America transactions. In addition, which of the multiple indenture
supplements was Ms. Kaswan referring to? Was she asking for information about BNYM
employees, Bank of America employees, or Countrywide employees, or all three? When Mr.
Facendola testified that any BNYM involvement came from "either the MBS group or the
corporate finance group," why didn't Ms. Kaswan show Mr. Facendola an actual indenture, and
ask him to identify the working group of the BNYM signatory? If Ms. Kaswan was truly
interested in learning information, why didn't she bother to show the witness *any* BNYM
documents?

　　　　In another example, when Ms. Kaswan finally asked a question relevant to topic 1, she
focused improperly on Mr. Facendola's personal knowledge. She asked, "when did you first
learn about the potential merger between Countrywide and Red Oak?" (G. Facendola Dep. Tr. at

William C. Fredericks
August 28, 2013
Page 3

39:15-18). She followed up: "Did you learn about it from the press, or did you learn about it in connection with your job?" (*Id.* at 40:7-9). She continued: "Did you discuss the potential merger with anyone at Bank of America or Countrywide?" Mr. Facendola truthfully answered all of these questions. Apparently frustrated that a Rule 30(b)(6) witness did not have *personal* knowledge (or recollection) of certain facts, she then attacked Mr. Facendola for doing what Rule 30(b)(6) witnesses are supposed to do (namely, learning the facts). (*Id.* at 43). This reflects a misunderstanding of the role of a Rule 30(b)(6) witness. And as to the separate point in your letter about BNYM's reliance on SEC filings, there is nothing unusual about BNYM having knowledge about the details of internal Bank of America-Countrywide transactions through SEC filings, given that BNYM never structured those transactions, was never consulted about the structure of those transactions, and never dictated to Bank of America or Countrywide how they should structure those transactions.

All of this raises a more fundamental point, which is that your topics (in particular topics 1 and 3) are incomprehensible and, despite repeated requests by us, not described with any particularity. The allegations that BNYM somehow conspired with Bank of America to strip assets from Countrywide Home Loans, Inc., while simultaneously suing to force Bank of America to assume the liabilities of Countrywide Financial Corp. are meritless and contradicted by the pleadings in the Delaware Chancery lawsuit. In addition, the topics are not described "with reasoned particularity." *See, e.g., Falchenberg v. N.Y. State Dept. of Educ.*, 642 F. Supp. 2d 156, 164 (S.D.N.Y. 2008); *Dealer Computer Services, Inc. v. Curry*, Slip Copy, No. 12 Civ. 3457(JMF)(JLC), 2013 WL 499520 (S.D.N.Y. Feb. 7, 2013); *Innomeds Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002). If plaintiffs wanted to know the actual names of the holders pursuing the Delaware lawsuit, they should have said so in the 30(b)(6) Notice. If they wanted to know the details of each supplemental indenture, they should have included that subtopic, too. It is impossible for BNYM to speculate about what information Ms. Kaswan might view as relevant in a given moment to topics that BNYM has always viewed as irrelevant. *See Falchenberg*, 642 F. Supp. at 164 (the examiner bears the burden of asking questions reasonably within the scope of the particularized topic). The law requires a good faith effort by BNYM to understand and respond to the 30(b)(6) topics. BNYM made more than a good faith effort, which plaintiffs would have known had their attorney not prematurely terminated the deposition.

Your complaints about Ms. Lundberg are equally baseless. You say that Ms. Lundberg was "ill-prepared to testify about the topics in the Order," but Ms. Lundberg, as you know, was testifying in her individual capacity. She was not required to offer corporate testimony on the "topics in the Order."[2] The charge that BNYM is "bandying" or engaged in a "runaround," or that it made "calculated efforts" not to refresh recollections is irresponsible, and ludicrous for at least three reasons. First, it is based entirely on the assumption that Mr. Facendola had no testimony to offer on the 30(b)(6) topics. That is false, and the fact that Ms. Kaswan made the

---

[2]     As you know, we offered Ms. Lundberg as a Rule 30(b)(6) witness if plaintiffs limited her deposition to one day. You unreasonably refused notwithstanding our agreement to make the same accommodation to your Rule 30(b)(6) witnesses.

Mayer Brown LLP

William C. Fredericks
August 28, 2013
Page 4

tactical mistake to terminate his Rule 30(b)(6) deposition is no basis for complaining about the knowledge of a Rule 30(b)(1) witness. Second, it ignores that plaintiffs are free to attempt to refresh recollections with whatever documents they wish; they have not hesitated to do so at other BNYM depositions. The problem is not with a failure of recollection; it is with the baseless assumption that BNYM engaged in the conspiracy that underlies the 30(b)(6) topics. And finally, this charge assumes a level of unethical conduct by BNYM and its attorneys that does not even justify a response.

There was a responsible way to proceed with Mr. Facendola's deposition, and there is no better illustration of this point than the deposition of PABF's corporate designee, Samuel Kunz. As you know, we served a Rule 30(b)(6) notice on May 23, 2013 that identified specific, concrete topics for deposition. In response to questions at the deposition about one topic— "Plaintiff's knowledge of the mortgage-backed securities market and industry"—Mr. Kunz testified that he could offer no information about a critical time period because he was not employed by PABF at the time and had done nothing to educate himself for the deposition. (S. Kunz Dep. Tr. at 85-86). With respect to another topic—"[l]osses suffered by Plaintiffs as a result of its investments in the Covered Trusts"—Mr. Kunz testified that he did not know how losses were calculated, who calculated the losses, or (without looking at documents) what the losses were. (*Id.* at 132-33). Mr. Kunz had no knowledge about several other topics – he did not know how PABF made the decision to bring this lawsuit (*id.* at 143-44), did not know how the Fund was managing the litigation (*id.* at 149-50), and did not know most of the facts relating to PABF's status as a class representative (*see, e.g., id.* at 64, 123-24, 127, 128-29). Instead of refusing to show the witness any relevant documents (as Ms. Kaswan did) or bizarrely terminating the deposition (as Ms. Kaswan did) or threatening sanctions (as you now have, following a pattern from the Scott & Scott firm), Mr. Martinez continued the deposition, attempted to refresh the witness's recollection with documents, identified gaps in his testimony, and issued interrogatories to fill in the significant knowledge gaps that remained.

There was none of that here. Ms. Kaswan's behavior during Mr. Facendola's deposition was inexcusable, and even sanctionable given the preparation by BNYM that led to it. We do not intend to seek sanctions but we refuse to reward plaintiffs for their attorney's misconduct, and we are startled that you can even hint at sanctions against BNYM against this backdrop and given Mr. Kunz's deposition.

In short, we refuse to produce additional documents or additional witness testimony. Nonetheless, in order to put this issue to rest, we are willing to respond to concrete and focused interrogatories pertaining to topics 1 and 3. *Dealer Computer Services, Inc.*, 2013 WL 499520, at *2 (stating to the extent that broad information is requested, interrogatories are more appropriate tools for discovery). Because Ms. Kaswan never asked questions regarding "BNYM's consent to change in Master Servicer following the Transactions" (topic 2), that topic has been waived.

Mayer Brown LLP

William C. Fredericks
August 28, 2013
Page 5

We are available to discuss further.

Very truly yours,

Matthew D. Ingber

cc:    Paula G. Lin
       Michael Martinez
       Christopher J. Houpt