```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

RETIREMENT BOARD OF THE
POLICEMEN'S ANNUITY AND
BENEFIT FUND OF THE CITY OF
CHICAGO, on Behalf of Itself
and Similarly Situated
Certificate Holders,

                Plaintiffs,

           v.                        11 CV 5459 (WHP)

THE BANK OF NEW YORK MELLON
(as Trustee Under Various
Pooling and Servicing
Agreements),

                Defendants.
------------------------------x
                                     New York, N.Y.
                                     September 3, 2014
                                     12:20 p.m.
Before:

              HON. WILLIAM H. PAULEY III,

                                     District Judge

                         APPEARANCES

SCOTT & SCOTT LLP
     Attorneys for Plaintiffs
BY:  WILLIAM C. FREDERICKS
     BETH ANN KASWAN

MAYER BROWN LLP
     Attorneys for Defendants
BY:  MATTHEW D. INGBER
     PAULA GARRETT LIN
     LISA R. PLUSH
```

1             THE DEPUTY CLERK:  Matter on for a status conference
2     of Retirement Board of the Policemen's Annuity And Benefit Fund
3     of the City of Chicago versus the Bank of New York Mellon.
4             Will counsel for the plaintiffs please state your
5     appearances.
6             MR. FREDERICKS:  William Fredericks, Scott & Scott
7     Attorneys At Law LLP, for plaintiffs.
8             MS. KASWAN:  Beth Kaswan, also with Scott & Scott, for
9     plaintiffs.
10            THE DEPUTY CLERK:  Counsel for the defendants?
11            MS. LIN:  Good afternoon, your Honor.  Paula Lin with
12    Mayer Brown on behalf of the defendant.
13            MR. INGER:  Good afternoon.  Matthew Ingber from Mayer
14    Brown for Bank of New York Mellon.
15            MS. PLUSH:  Good afternoon.  Lisa Plush from Mayer
16    Brown on behalf of the Bank of New York Mellon.
17            THE COURT:  All right.  I set this matter down for a
18    conference following my resolution of a sampling of issues
19    related to the defendant's assertion of privilege on certain
20    documents.  I want to take everyone's temperature and find out
21    where we're headed from here.
22            So who wishes to be heard?  Mr. Fredericks, Ms. Kaswan
23    why don't you lead off.
24            MR. FREDERICKS:  I'll lead off, your Honor.
25            With respect to the privilege document review, we

Case 1:11-cv-05459-WHP   Document 150   Filed 11/17/14   Page 3 of 15   3
E93KRETC                    ***DRAFT***

received from defendants the additional documents that the Court ordered to be produced on August 28th, and I believe also some additional documents which I think we considered as being identical copies of documents that the Court ordered produced.

We have made an initial review of those materials. We forwarded to defendants on Friday afternoon, the day after we received the additional document production, a list of additional documents which, based on our initial review of document descriptions and recipients and senders, we thought would plausibly also not be privileged, and requested that defendants rereview those documents in light of the Court's order for possible production as may be appropriate.

Obviously, it's been a long Labor Day weekend we haven't received a response to that letter, but it would be our expectation that we would receive a response in not too long a time and it would be our hope to try to work through the meet-and-confer process to try to resolve any outstanding issues and so we would suggest that that process be allowed to go forward before seeking any further intervention of the Court.

I think for the record, our letter identified approximately 50 additional documents that we thought should be produced. So I think that in light of those circumstances, that the course of action that I suggest we hope will be agreeable to the Court and to the defendants.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1            THE COURT:  Ms. Lin.

2            MS. LIN:  Your Honor, we agree with the plaintiffs'

3    proposal and we will respond to their letter.

4            I would just add to that, just so that everyone is

5    clear, that we have been reviewing -- we have done an

6    additional review of our original privilege log since the

7    Court's February order regarding in camera review and we have

8    been assessing our original privilege calls and making

9    productions of additional material off of the logs since that

10   order came down and in addition to that, we are taking your

11   Honor's August 18th order and we are looking at our privileged

12   log more generally we are certainly going to look at the

13   documents that the plaintiffs have identified to us but we are

14   going to look at the privilege log as a whole and where there

15   are similar -- where your privilege determinations have value

16   to other documents on the log we will apply those

17   determinations?

18           R.

19           THE COURT:  Well, obviously I think that's a very

20   efficient and effective way to proceed.  My first question is:

21   How much time do you think you need to complete that process?

22   Let's see if we can tie off the issues related to the privilege

23   log and move on to other matters like expert discovery and

24   class assertification?

25           MS. LIN:  Your Honor, I think we would need one month

1   to do everything, that is, both respond to the documents raised

2   in the letter and also go through the log more generally and

3   identify anything else that should be produced.

4              MR. FREDERICKS:  That sounds like a reasonable goal

5   for the parties to aspire to.  Past history sometimes suggests

6   that it takes a little longer, but I think in terms of order of

7   magnitude, a month, four to eight weeks is probably the right

8   order of magnitude.

9              THE COURT:  All right.  Why don't we be Solomonic then

10  and say October 17th.  We'll see if we can complete that

11  process now.

12             What are the parties' views in terms of moving forward

13  with the litigation in this case, recognizing that there is

14  still an interlocutory appeal that's pending?

15             MR. FREDERICKS:  I'll go first with plaintiffs' views.

16             There are a handful of additional cleanup discovery

17  matters dating back to the winter of this year which we think

18  may require the Court's attention.  Many issues we have

19  reviewed but, again, in terms of cleanup I want to identify the

20  salient ones for the Court.

21             First of all, I believe in docketed entry number 168

22  we submitted a joint letter with defendants requesting the

23  production of certain additional categories of documents that

24  were the subject of a November 27th, 2013, discovery request --

25             THE COURT:  You said docket number what?

1           MR. FREDERICKS:  Docket 168, your Honor.

2           THE COURT:  The docket --

3           MR. FREDERICKS:  I'm sorry, it's 138.

4           THE COURT:  Good, OK.

5           MR. FREDERICKS:  My mistake, your Honor.

6           The Court denied that request without prejudice to its

7   being renewed following the Court's ruling on the claim for

8   breach of covenant of good faith and fair dealing.  We have

9   gone back, reviewed, of course, the Court's order, we've gone

10  back and reviewed the documents that we requested.  And we

11  believe that there are still approximately a half dozen

12  categories of documents from our November document requests

13  which will remain relevant, which are relevant, have been

14  relevant in the case for some time.  And the parties had been

15  involved in a meet-and-confer process with respect to a number

16  of those requests, but those discussions ultimately were

17  preempted by the joint letter process.

18          So that issue -- there are still some issues that are

19  live there, and we would be happy to pursue with defendants

20  those additional requests which we still believe are salient.

21  If we can't resolve our dispute, we may need to tee that issue

22  up again.

23          The parties had also agreed amongst themselves not to

24  submit a joint letter to your Honor in February of 2014

25  regarding plaintiffs' efforts to take the deposition of Robert

1    bailee, who was an in-house counsel at Bank of New York Mellon.
2    The parties mutually agreed it would be premature to tee that
3    issue up until the Court had finished its review of privileged
4    documents.  The defendants had submitted to us a form of
5    proposed affidavit attesting to their view, apparently
6    Mr. Bailey's view that his role was limited to attorney-client
7    advising, that he didn't have any business role.
8              I believe that that affidavit, for example, was never
9    signed because we never actually filed the joint letter, but I
10   think that to preserve the record and to make clear that there
11   was no waiver on plaintiffs' part of our efforts to depose
12   Mr. Bailey, we will likely have to tee that issue up again and
13   just make an appropriate record, with appropriate supporting
14   affidavits from defendants attesting to their position.
15   Obviously we don't want to have a situation at trial where Bank
16   of New York comes forward and says, oh, we want to put
17   Mr. Bailey on the stand to testify as to certain subjects when
18   they had told us in prior conversations that it would be
19   inappropriate to have him deposed because of his purportedly
20   exclusive legal role.
21             So I think that those are the cleanup matters from the
22   winter.  Obviously with respect to the Second Circuit opinion,
23   the standing issue, we're all waiting for the Second Circuit.
24   And depending on how the Court rules, there may be a need to
25   reopen discovery as to a number of points, most obviously

1    discovery relating to Bank of New York Mellon's treatment of
2    trusts other than the trusts in which this Court has previously
3    found we have standing.
4            To the extent that the final size of the class and
5    therefore issues relating to damages, for example, or certain
6    damages like damages, remain in determina, it would seem
7    inefficient and expensive and time-consuming to proceed either
8    to resolution of class certification or related expert
9    discovery issues until the Court -- I was going to say upstairs
10   but I guess across the street in Foley square has issued its
11   decision.  I would just alert the Court at least as I'm aware
12   that the Second Circuit appeal issues on both the TIA issues
13   and the standing issues were fully briefed and were argued in
14   May.  I don't care to speculate what the timetable of the
15   Second Circuit's decision is but I don't think that we're
16   talking about an inordinate delay and we're all waiting with
17   interest to see what the Second Circuit does.
18           So I think that would be our status report on some
19   cleanup items as well as our perspective on what in sum would
20   be a stay of class certification and expert discovery until we
21   get some additional guidance as to the scope of the case and
22   the claims that are in or out of the case from the Second
23   Circuit.
24           THE COURT:  Would these cleanup items in any way be
25   affected by whatever the Second Circuit does?

1          MR. FREDERICKS:  No, your Honor -- I don't think so.
2    It's conceivable in some respects, but the cleanup document
3    discovery relates primarily to our request for information,
4    documents in Bank of New York Mellon's possession relating to
5    country wide's financial condition and possible knowledge of
6    fraudulent conveyances, preferential transfers or alleged
7    fraudulent conveyances preferential transfers.
8          I would just note that after, defendants would
9    contend, that document discovery closed we receive a copy of a
10   letter -- it's previously been brought to the Court's
11   attention -- a letter from the Aurelius investment firm
12   directed to Bank of New York Mellon, basically expressing its
13   concern that Countrywide was insolvent, and indeed deeply so,
14   that the Countrywide transactions with Bank of America in July
15   and thereafter in 2008 were being structured in a way to strip
16   out assets from Countrywide, which, it's our position, would
17   have left Countrywide with far fewer assets available to pay a
18   judgment than if Bank of New York acted prudently, had acted to
19   conserve the assets of Countrywide.
20         It has been Bank of New York Mellon's consistent
21   position, both in this court and then across the street in
22   front of Judge Kapnick that the primary reason they entered
23   into a later settlment for $8-1/2 billion no one could have
24   obtained any more money because of Countrywide's limited
25   ability to pay.  Our contention is, had they acted in the

1  middle of 2008, when Countrywide still had tens of billions of
2  assets, I believe Countrywide home loans alone had over
3  $55 billion in assets that there would have been a substantial
4  greater pool to collect a judgment from.
5           So I believe that, regardless of how the Second
6  Circuit comes down on the TIA or standing issues, those issues
7  are still in the case, both with respect to our theory of
8  damages and as a response to what we anticipate to be a likely
9  defense to liability and/or damages that will be offered by
10 Bank of New York Mellon saying, oh, what could we have done,
11 there was no money in the piggy bank.
12           So those documents are important.  And, again, I
13 mention to your Honor we're aware of this Aurelius letter which
14 was sent specifically to Bank of New York Mellon and carbon
15 copied to Bank of New York Mellon's outside counsel.  We got a
16 copy of this letter.  We only know about it because we
17 subpoenaed their outside counsel at Carter Ledyard but we have
18 been locked in our efforts, actually, for example, to find out
19 who at Bank of New York Mellon got copies of this letter, who
20 got copies of other correspondence from Countrywide investors
21 raising concerns about Countrywide's financial conditions.
22 Unfortunately our 30(b)(6) deponent from cart lettered had no
23 recollection of the Aurelius letter so we had no idea at who
24 Bank of New York Mellon may have gotten this or similar
25 correspondence or what conversations may have been had so

1    that's perhaps an overlong way of saying that our document
2    requests relating to the structuring of the 2008 transactions
3    between Countrywide and B of A and documents relating to
4    Countrywide's solvency Bank of New York Mellon's knowledge
5    thereof, fall within a category of documents which we think is
6    still going to be relevant regardless of how the Second Circuit
7    rules.
8                THE COURT:  All right.
9                Who from the defendants?  Mr. Inger?
10               MR. INGER:  Yes.  Good afternoon, your Honor.
11               We are in agreement with the plaintiffs object some of
12   what they said, that is, with respect to the procedural issues.
13   We think it makes sense to have a meet-and-confer about the
14   cleanup discovery issues.  We thought that after your Honor
15   dismissed the implied covenant claim these outstanding document
16   requests would no longer be the subject of a meet-and-confer
17   because we thought the underlying documents related
18   specifically to that claim, but we're happy to have a
19   meet-and-confer object that topic and then raise the issue with
20   your Honor if necessary.
21               With respect to the deposition of Mr. Bailey, we have
22   told the plaintiffs what our position is, that all of his
23   documents would be privileged and it's unnecessary and a waste
24   of everyone's time to take the deposition just so that we can
25   assert the privilege over virtually every question again,

1   though, that's something we're happy to meet and confer about.

2           With respect to how we proceed from here, in light of
3   the pending Second Circuit appeal, we agree that it would be
4   inefficient to proceed with class cert discovery.  Class cert
5   expert discovery, and merits expert discovery, in light of both
6   the standing issues and the TIA issues we're certainly hopeful
7   that we are going to get a decision from the Second Circuit
8   shortly I can't predict when we're going to get the decision
9   but I hope it will be sometime soon, given that it was argued
10  back in May.  And in the meantime it sounds like there is some
11  work for us to do we're going to be going through the
12  privileged documents and making any production that we think is
13  appropriate under the circumstances in light of your Honor's
14  order.  We'll have a meet-and-confer about the Bailey deception
15  and these additional categories of documents.  They clearly
16  believe that these issues are still at Play.  I'm pretty
17  certain our position will be that they're not but we will have
18  a discussion about that.

19          So I think we could use our time productively and then
20  perhaps we could set a date if we don't have a decision, to
21  come back and determine how to proceed but with respect to
22  damages and class cert, we find it challenging to say the least
23  to proceed with discovery on those issues when we don't know,
24  for example, how many trusts are at issue.

25          THE COURT:  All right.  It sounds like we're all in

1   agreement regarding class cert and expert discovery.  So for
2   the time being, I won't fix, even attempt to fix any schedules
3   there.
4            It strikes me that the parties not only could continue
5   to meet and confer regarding the privilege issues that we have
6   discussed but also the cleanup discovery.  And if you cannot
7   resolve those matters, it strikes me that -- what about
8   submitting either a status report or presenting the issues to
9   me in a joint letter by October 17?  Is that going to be
10  sufficient time to tie off these various matters including the
11  Bailey deposition?
12           MR. INGER:  I think so, your Honor.
13           MR. FREDERICKS:  Plaintiffs agree.
14           THE COURT:  All right.  So by October 17 you will
15  giver me a letter that will report on those matters that have
16  been resolved through meet-and-confers and hopefully that will
17  be the bulk of the letter, if not all of the letter, and you'll
18  also present to me any disputes, discovery disputes, that you
19  wish to have resolved.
20           Just perhaps so we stay on track, I think that we
21  should have a further conference in early November, let's say
22  November 7th.
23           MR. INGER:  What day of the week is that, your Honor?
24           THE COURT:  That's a Friday.
25           MR. INGER:  I'm supposed to be out of town that

1     Friday, November 7th I can do it any other day that week.

2          THE COURT:  The 6th at 4:30, November 6th at 4:30.

3     And if the trial I have that week is folding, I'll try to get

4     you here a little earlier in the afternoon.

5          Is there anything else that we can accomplish this

6     afternoon?

7          MR. FREDERICKS:  I don't believe that there are any

8     other outstanding discovery "from defendants, so I assume that

9     the schedule is likely to work because I'm not aware of any

10    concerns on the other side.

11         MR. INGER:  We've had some back-and-forth, your Honor,

12    over some interrogatories that we're still waiting for a

13    response to from the plaintiffs.  I think we could just throw

14    that into the bucket of cleanup discovery items that we will

15    address through the meet-and-confers.

16         THE COURT:  Fine.

17         MR. FREDERICKS:  Counsel has refreshed my recollection

18    I think that is the one issue.

19         THE COURT:  Good so there will be no October

20    surprises, right?

21         MR. INGER:  No October surprises.

22         THE COURT:  Thanks very much for coming in I didn't

23    mean just enter a brief scheduling order for the conference and

24    the submission to the Court on October 17th.

25         MS. LIN:  Thank you, your Honor.

1            MR. FREDERICKS:  Thank you, your Honor.
2                              * * *