USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/18/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                      :

RETIREMENT BOARD OF THE              11 Civ. 5459 (WHP)
POLICEMEN'S ANNUITY AND          :
BENEFIT FUND OF THE CITY             MEMORANDUM & ORDER
OF CHICAGO, *et al.*,                      :

        Plaintiffs,            :

        -against-             :

THE BANK OF NEW YORK MELLON,  :

        Defendant.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

        Defendant Bank of New York Mellon ("BNYM") moves to dismiss Plaintiffs Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago, City of Grand Rapids General Retirement System, and City of Grand Rapids Police and Fire Retirement System's ("Grand Rapids P&F") Second Amended Complaint ("SAC") for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). For the following reasons, Defendant's motion to dismiss is denied.

## BACKGROUND

        Familiarity with this Court's earlier opinions regarding BNYM's previous motions to dismiss is presumed. See Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon, 914 F. Supp. 2d 422 (S.D.N.Y. 2012); Ret. Bd. of Policemen's Annuity & Ben. Fund of City of Chicago v. Bank of New York Mellon, No. 11-cv-5459 (WHP),

2014 WL 3858469 (S.D.N.Y. July 30, 2014).  For purposes of this motion, a short procedural recap will suffice.

Plaintiffs own mortgage-backed securities issued by trusts and indentures for which BNYM serves as trustee.  The gravamen of the Complaint is that a prudent trustee was obligated to remedy Countrywide's failures by requiring the master servicer to cure or repurchase the defective loans in the trusts.  (SAC ¶¶ 8, 14-16.)  Yet BNYM took no action to protect Plaintiffs.  As a consequence of the underwriting defects and inadequate servicing, the value of Plaintiffs' securities plummeted.  (SAC ¶¶ 97-101.)

On April 29, 2015, this Court dismissed Plaintiffs' Trust Indenture Act ("TIA") claims arising from trusts governed by pooling and service agreements ("PSAs") pursuant to the mandate from the Court of Appeals.  (ECF No. 156.)  See Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon, 775 F.3d 154 (2d Cir. 2014). Fifteen trusts remain at issue in this case: one Delaware trust indenture, for which Plaintiffs bring suit under the TIA, and fourteen PSA trusts, for which Plaintiffs bring suit under New York law.

## LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). Plaintiffs must establish this Court's jurisdiction by a preponderance of the evidence; courts "may not simply rely upon favorable inferences drawn from the complaint."  Blackrock Allocation Target Shares: Series S Portfolio v. U.S. Bank Nat'l Ass'n, No. 14-cv-9401 (KBF), 2015 WL 2359319, at *3 (S.D.N.Y. May 18, 2015).

DISCUSSION

Defendant makes three arguments in support of its motion: (1) this Court does not have original jurisdiction over the TIA claim because the TIA does not create a private right of action; (2) even if this Court has original jurisdiction over the TIA claim, it should decline supplemental jurisdiction over the state-law claims; and (3) this Court lacks diversity jurisdiction over all of the claims.

I.      Private Right of Action Under the TIA

Defendant argues that the Section 315 of the TIA does not establish a private right of action. Section 315(b) of the TIA requires trustees to provide security holders with notice of defaults. See 15 U.S.C. § 77ooo(b). Section 315(c) imposes fiduciary duties on trustees following an "event of default." See Semi-Tech Litig., LLC v. Bankers Trust Co., 353 F. Supp. 2d 460, 478-80 (S.D.N.Y. 2005) (citing 15 U.S.C. § 77ooo(c)). Because Section 315 does not expressly create a federal private right of action, the issue is whether it "can be interpreted to disclose the intent to create one." Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, 552 U.S. 148, 164 (2008).

As noted by another judge who recently addressed this argument, courts have uniformly held that Section 315 gives rise to a private right of action:

> [C]ourts—including those in this Circuit—have consistently recognized an implied private right of action under [Sections 315(b) and (c) of the TIA]. See, e.g., Zeffiro v. First Pa. Banking & Tr. Co., 623 F.2d 290 (3d Cir. 1980); LNC Inv., Inc. v. First Fid. Bank, 935 F. Supp. 1333 (S.D.N.Y. 1996) (citing cases); see also Bluebird Partners, L.P. v. First Fid. Bank, N.A., 85 F.3d 970, 974 (2d Cir. 1996) (citing Zeffiro favorably, and describing it as "establish[ing] a private cause of action under the [TIA]"); cf. In re Bankers Tr. Co., 450 F.3d 121, 126-27 (2d Cir. 2006) (analyzing whether a trustee had complied with Section 315(b) without suggesting that there was no private right of action); Royal Park Investments SA/NV v. HSBC Bank USA, Nat. Ass'n, No. 14–CV–8175 (SAS), 2015 WL

> 3466121, at *14-15 (S.D.N.Y. June 1, 2015) (holding that the plaintiffs stated a claim under Sections 315(b) and (c) of the TIA).

Fixed Income Shares: Series M v. Citibank N.A., No. 14-cv-9373 (JMF), --- F.Supp.3d ----, 2015 WL 5244707, at *4 (S.D.N.Y. Sept. 8, 2015).  But see Zeffiro, 623 F.2d at 301-03 (Layton, J. dissenting) (finding that there was no implied right of action in the TIA because, inter alia, when the TIA was passed in 1938 "[l]egal thinking simply assumed that the state courts were the proper forum" to address "indenture abuses.").[1]

Contrary to Defendant's argument, the Supreme Court's decisions in Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, 552 U.S. 148 (2008), and Alexander v. Sandoval, 532 U.S. 275 (2001), do not contravene the line of authority holding that a private right of action exists under Section 315 of the TIA.  In Stoneridge, the Court declined to extend Section 10(b)'s implied right of action to aiders and abettors in securities violations, noting that Congress expressly declined to extend liability under Section 10(b) when it passed the Private Securities Litigation Reform Act.  The Court distinguished its holding in Stoneridge from "case[s] in which Congress has enacted a regulatory statute and then has accepted, over a long period of time, broad judicial authority to define substantive standards of conduct and liability." Stoneridge, 552 U.S. at 163.  Here, by contrast, courts have unanimously interpreted Section 315 as implying a private right of action for at least 35 years.

Moreover, in Sandoval, the Court held that there was no implied right of action to enforce Title VI's disparate impact regulations, emphasizing that "[s]tatutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer

---

[1] After finding "that the TIA does not apply to the New York certificates at issue," the Second Circuit, in this case, declined to "address the scope of the private right of action that the TIA authorizes." Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon, 775 F.3d 154, 170 (2d Cir. 2014).

rights on a particular class of persons." 532 U.S. at 289 (quotation and citation omitted). However, this Court is persuaded that Sandoval is distinguishable in view of Section 315's imposition of specific fiduciary duties, which necessarily implies corresponding rights in the beneficiaries. See Fixed Income Shares, 2015 WL 5244707, at *6 (citing Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Ward, 563 F.3d 276, 286 (7th Cir. 2009)). Accordingly, this Court agrees that the TIA implicitly gives rise to a private right of action.

II. Supplemental Jurisdiction

BNYM argues that this Court should not exercise supplemental jurisdiction over Plaintiffs' state-law claims. If a court has original jurisdiction over a claim, supplemental jurisdiction may be exercised over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The relevant test is whether the other claims "derive from a common nucleus of operative fact," such that plaintiff "would ordinarily be expected to try them all in one judicial proceeding." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966). Even with such a showing, a court may decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Before declining supplemental jurisdiction, courts "should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).

A.  Common Nucleus of Operative Fact

Relying principally on the Second Circuit's statement that Plaintiffs' claims must be "proved loan-by-loan and trust-by-trust," Retirement Bd., 775 F.3d at 162, Defendant argues that Plaintiffs' TIA claim lacks a common nucleus of operative fact with the PSA claims.  But the need for Plaintiffs to prove liability for each of the fifteen trusts does not preclude finding a common nucleus of operative fact.  For example, in Blackrock Balanced Capital Portfolio v. HSBC Bank USA, Nat'l Ass'n, the court noted that: (1) the indenture and PSA trusts imposed similar obligations on the trustee; (2) the burden of proof would be substantially the same; (3) though plaintiffs would need to prove their claims loan-by-loan and trust-by-trust, the allegations arise from the common conduct of the trustee in systematically failing to perform its duties as a trustee; (4) the vast majority of trusts had the same master servicer; and (5) "the claims would likely require depositions of many of the same witnesses, given that [defendant's] corporate trust department is responsible for administrating both types of trusts, regardless of whether they were PSA or [TIA] trusts." Blackrock Balanced, 95 F. Supp. 3d 703, 709-10 (S.D.N.Y. 2015); see also Fixed Income Shares, 2015 WL 5244707, at *7 ("The fact that Plaintiffs will have to present loan-specific evidence to prevail at trial or on summary judgement does not mean that there is no common nucleus of operative fact between the PSA Trust claims and the [TIA] claims.").

Here, the common nucleus of operative fact is demonstrably stronger than in Blackrock Balanced or Fixed Income Shares because all of the trusts at issue were sponsored by Countrywide affiliates and serviced by Countrywide Home Loans Servicing.  Accordingly, Plaintiffs have demonstrated that their claims share a common nucleus of operative fact.

B.  Discretionary Exercise of Supplemental Authority

Defendant argues that this Court should decline to exercise supplemental authority because Plaintiffs' state-law claims predominate over the federal claim.  Of course, there is some concern that permitting a single TIA claim to create jurisdiction over fourteen state-law claims "would be to allow a federal tail to wag a state dog."  Blackrock Allocation Target Shares: Series S Portfolio v. U.S. Bank Nat'l. Ass'n, No. 14-cv-9401 (KBF), 2015 WL 2359319, at *4 (S.D.N.Y. May 18, 2015).  However, as discussed above, this is not a case "where the factual or legal analyses governing the federal and state claims are unrelated."  SST Glob. Tech., LLC v. Chapman, 270 F. Supp. 2d 444, 457 (S.D.N.Y. 2003).

Moreover, considerations of judicial economy, convenience and fairness weigh in favor of retaining supplemental jurisdiction.  At this stage, declining jurisdiction "would actually increase the complexity of the action by creating parallel proceedings regarding one subject matter."  Blackrock Balanced, 2015 WL 1501283, at *5.  This Court has presided over this action for more than four years, while overseeing multiple motions to dismiss and the completion of fact discovery.  Defendant has made no showing that segregating the claims at this late stage would further judicial economy, convenience or fairness for either party.  Accordingly, this Court finds that it is in the interest of justice to exercise supplemental jurisdiction over Plaintiffs' state-law claims.

III.    Diversity Jurisdiction

In view of this Court's exercise of supplemental jurisdiction, it need not address Defendant's argument that Plaintiffs have not established diversity jurisdiction.  However, it is worth noting two points relevant to this Court's retention of supplemental jurisdiction over the

state-law claims. First, the parties have stipulated that at least one Plaintiff, Grand Rapids P&F, has no trustees or beneficiaries in New York, and therefore is completely diverse from BNYM. (Opp'n Br. at 3-4.) Second, while the Supreme Court's forthcoming decision in <u>Americold Logistics, LLC v. ConAgra Foods, Inc.</u>, 136 S. Ct. 27 (2015) will (hopefully) resolve the deeply conflicting body of law addressing the citizenship of trusts for purposes of federal diversity jurisdiction, exercising supplemental jurisdiction eliminates any uncertainty on that point here and permits this case to move forward in a timely fashion.

## CONCLUSION

For the foregoing reasons, BNYM's motion to dismiss the Second Amended Complaint is denied. This Court exercises supplemental jurisdiction over Plaintiffs' state law claims. The parties are directed to submit a proposed scheduling order addressing remaining discovery to be taken in this case by January 15, 2016.

The Clerk of the Court is directed to terminate the motion pending at ECF No. 169.

Dated: December 18, 2015
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Copies to Counsel of Record via ECF.*